UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MELISSA E. WALKER,

                     Plaintiff,

      -against-

THOMAS H. MILHORAT, M.D., PAOLO A.
BOLOGNESE, M.D., ROGER W. KULA, M.D., L.
THIERRY REMY, M.D., CHANLAND
ROONPRAPUNT, M.D., MISAO NISHIKAWA,
M.D., JOHN XI CHEN, M.D., NORTH SHORE –
LONG ISLAND JEWISH HEALTH SYSTEM,
INC. , THE CHIARI INSTITUTE, an
unincorporated entity of North Shore University
Hospital and HARVEY CUSHING INSTITUTES
OF NEUROSCIENCE, an unincorporated entity of
North Shore University Hospital,

                     Defendants.

-----------------------------------------------------------------X

Civil Action No.: _____

**CV 10 – 621**

VERIFIED
COMPLAINT AND
DEMAND FOR
<u>JURY TRIAL</u>

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★  FEB 1 1 2010  ★

BROOKLYN OFFICE

BIANCO, J.
TOMLINSON, M.J.

Plaintiff, **MELISSA E. WALKER,** by her attorneys, **GOLDSMITH CTORIDES &**

**RODRIGUEZ, L.L.P.,** and **LOCKS LAW FIRM PLLC,** as and for her Verified Complaint

against the Defendants alleges, upon information and belief, as follows:

<u>PRELIMINARY STATEMENT</u>

    1.    This case arises out of medical care and treatment received by the Plaintiff,

**MELISSA E. WALKER, at THE CHIARI INSTITUTE, an unincorporated entity of North**

**Shore University Hospital, NORTH SHORE – LONG ISLAND JEWISH HEALTH**

**SYSTEM, INC. and the HARVEY CUSHING INSTITUTES OF NEUROSCIENCE, an**

**unincorporated entity of North Shore University Hospital, from Defendants THOMAS H.**

**MILHORAT, M.D., PAOLO A. BOLOGNESE M.D., ROGER W. KULA, M.D., L.**

**THIERRY REMY, M.D., CHANLAND ROONPRAPUNT, M.D., MISAO NISHIKAWA,**

**M.D. and JOHN XI CHEN, M.D.,** between June, 2005 and August, 2007.

2.      MELISSA E. WALKER was initially evaluated at Defendant, THE CHIARI INSTITUTE, on June 29, 2005.  It was recommended to her at that time that she have posterior fossa decompression surgery as a treatment for her Chiari I Malformation and syringomyelia. During that initial visit, Defendant, PAOLO A. BOLOGNESE, M.D., determined that she did not have tethered cord syndrome.

3.      On November 30, 2005, Defendants, THOMAS H. MILHORAT, M.D. and PAOLO A. BOLOGNESE M.D. performed posterior fossa decompression surgery upon the Plaintiff, MELISSA E. WALKER, on the premises of Defendant, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC.

4.      The posterior fossa decompression surgery was not successful in treating the Plaintiff's symptoms.  Due to the extensive nature of the posterior fossa decompression performed, the plaintiff experienced worsening symptoms following said surgery.  Accordingly, the Defendants then recommended and performed craniocervical fusion surgery on the premises of Defendant, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC. on December 23, 2005.

5.      The posterior fossa decompression surgery and craniocervical fusion surgery had "less than satisfactory" results, and as such, the Defendants, falsely advised the Plaintiff, MELISSA E. WALKER, that she was suffering from tethered cord syndrome which they said was causing and contributing to her Chiari Malformation and syringomyelia and that she required surgery on the tethered cord to treat her Chiari Malformation and Chiari related symptoms.

6.     The Defendants thereafter recommended and performed tethered cord surgery upon Plaintiff, MELISSA E. WALKER, without advising her that said surgery was unnecessary and experimental and that she was being used as a human research subject. Specifically, on October 26, 2006, Defendants, THOMAS H. MILHORAT, M.D. and PAOLO BOLOGNESE, M.D., performed a spinal cord untethering surgery on the premises of Defendant, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC., without advising her that the untethering surgery was unnecessary and experimental to the extent it was not a scientifically accepted method for treating Chiari Malformation. The safety and efficacy of said "untethering" surgery as a treatment for Chiari I Malformation has never been proven by any published peer-reviewed medical or scientific study.

7.     Tethered cord surgery (sectioning of the filum terminale) was not and is not an acceptable scientifically supportable treatment for Chiari I Malformation.

8.     Tethered cord surgery (sectioning of the filum terminale) was and is considered an experimental treatment for Chiari I Malformation.

9.     Defendants recommended and performed tethered cord surgery solely for their financial gain. Defendants utilized the Plaintiff, MELISSA E. WALKER, as a human research subject without her consent, solely for financial gain. The tethered cord surgery, like the other surgeries performed at Defendant, NORTH SHORE UNIVERSITY HOSPITAL, in no way benefited the Plaintiff, MELISSA E. WALKER.

10.     As a result of these surgeries, Plaintiff, MELISSA E. WALKER, has been caused to suffer severe and irreversible damages that will impact the rest of her life, including but not limited to excruciating lower back pain, cervical muscle spasms, protruding and painful hardware in the neck, and loss of range of motion in the neck.

3

**JURISDICTION AND VENUE**

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 based upon the diversity of citizenship of the Plaintiffs and the Defendants and since this action seeks damages in excess of SEVENTY FIVE THOUSAND ($75,000.00) DOLLARS, exclusive of interest and costs.

12.     Venue is proper in this district pursuant to 28 U.S.C. 1391(a).

**THE PARTIES**

13.     At all times hereinafter mentioned, Plaintiff, **MELISSA E. WALKER**, resided at 19741 Deer Park Avenue, Baton Rouge, LA, 70817.

14.     At all times hereinafter mentioned, THOMAS H. MILHORAT, M.D. (hereinafter referred to as **"MILHORAT"**), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021.

15.     At all times hereinafter mentioned, Defendant, MILHORAT, held himself out to the public as a specialist in the area of neurosurgery.

16.     At all times hereinafter mentioned, PAOLO A. BOLOGNESE, M.D. (hereinafter referred to as **"BOLOGNESE"**), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021.

17.     At all times hereinafter mentioned, Defendant, BOLOGNESE, held himself out to the public as a specialist in the area of neurosurgery.

18.     At all times hereinafter mentioned, ROGER W. KULA, M.D. (hereinafter referred to as **"KULA"**), was and is a physician duly licensed to practice medicine in the State of

4

New York and a citizen of the State of New York, practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021.

19.     At all times hereinafter mentioned, Defendant, KULA, held himself out to the public as a specialist in the area of neurology.

20.     At all times hereinafter mentioned, L. THIERRY REMY, M.D. (hereinafter referred to as "**REMY**"), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021.

21.     At all times hereinafter mentioned, Defendant, REMY, held himself out to the public as a specialist in the area of neurosurgery.

22.     At all times hereinafter mentioned, CHANLAND ROONPRAPUNT, M.D. hereinafter referred to as "**ROONPRAPUNT**"), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, previously practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021, and currently practicing medicine in New York County, at 1000 Tenth Avenue, Suite 5G-80, New York, NY 10019.

23.     At all times hereinafter mentioned, Defendant, ROONPRAPUNT, held himself out to the public as a specialist in the area of neurosurgery.

24.     At all times hereinafter mentioned, MISAO NISHIKAWA, M.D. (hereinafter referred to as "**NISHIKAWA**"), was and is an unlicensed physician, practicing medicine without a license in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021.

25.     At all times hereinafter mentioned, Defendant, NISHIKAWA, held himself out to the public as a specialist in the area of pathophysiology.

26. At all times hereinafter mentioned, JOHN XI CHEN, M.D. (hereinafter referred to as "**CHEN**"), was and is a physician duly licensed to practice medicine in the State of New York and a citizen of the State of New York, previously practicing medicine in Nassau County, at 865 Northern Boulevard, Great Neck, New York 11021, and currently practicing medicine at 1275 York Avenue, New York, New York 10065.

27. At all times hereinafter mentioned, Defendant, CHEN, held himself out to the public as a specialist in the area of neurology.

28. At all times hereinafter mentioned, Defendants, MILHORAT, BOLOGNESE, KULA, REMY, ROONPRAPUNT, CHEN, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC., THE CHIARI INSTITUTE and HARVEY CUSHING INSTITUTES OF NEUROSCIENCE knew or should have known that Defendant, NISHIKAWA was and is an unlicensed physician, practicing medicine without a license in Nassau Country, at 865 Northern Boulevard, Great Neck, New York 11021.

29. At all times hereinafter mentioned, Defendants, MILHORAT, BOLOGNESE, KULA, REMY, ROONPRAPUNT, CHEN, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC., THE CHIARI INSTITUTE and HARVEY CUSHING INSTITUTES OF NEUROSCIENCE held Defendant, NISHIKAWA out as a physician licensed to practice medicine in the State of New York and the world's leading expert on morphometrics.

30. At all times hereinafter mentioned, Defendant, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC. (hereinafter referred to as "**NORTH SHORE - LIJ**"), was and is a corporation duly organized and existing under the laws of the State of New York.

31.     At all times hereinafter mentioned, Defendant, NORTH SHORE - LIJ, by its agents, servants and employees, controlled, managed and operated the hospital located at 300 Community Drive, Manhasset, New York 11030, in the State of New York, County of Nassau, for the care and treatment of persons afflicted with illness and disease.

32.     At all times hereinafter mentioned, THE CHIARI INSTITUTE (hereinafter referred to as "**TCI**"), was and is an unincorporated entity of North Shore University Hospital, located at 865 Northern Boulevard, Great Neck, New York 11021.

33.     At all times hereinafter mentioned, the Defendant, TCI, was and is owned, controlled, managed and operated by Defendant, NORTH SHORE – LIJ.

34.     At all times hereinafter mentioned, the Defendant, TCI, was and is controlled, managed and operated by the Board of Directors of Defendant, NORTH SHORE – LIJ.

35.     At all times hereinafter mentioned, HARVEY CUSHING INSTITUTES FOR NEUROSCIENCE (hereinafter referred to as "**HARVEY CUSHING**"), was and is an unincorporated entity of North Shore University Hospital, located at 865 Northern Boulevard, Great Neck, New York 11021.

36.     At all times hereinafter mentioned, the Defendant, HARVEY CUSHING, was and is owned, controlled, managed and operated by Defendant, NORTH SHORE – LIJ.

37.     At all times hereinafter mentioned, the Defendant, HARVEY CUSHING, was and is controlled, managed and operated by the Board of Directors of Defendant, NORTH SHORE – LIJ.

38.     At all times hereinafter mentioned, Defendant, NORTH SHORE – LIJ and its Board of Directors, were responsible for the medical care rendered and the medical research being performed at Defendant, TCI.

39.     At all times hereinafter mentioned, Defendant, NORTH SHORE – LIJ and its Board of Directors, were responsible for the medical care rendered and the medical research being performed at Defendant, HARVEY CUSHING.

40.     At all times hereinafter mentioned, Defendant, MILHORAT, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

41.     At all times hereinafter mentioned, Defendant, MILHORAT, was a private attending physician with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

42.     At all times hereinafter mentioned, Defendant, MILHORAT, was the Chief of Neurosurgery at Defendant, NORTH SHORE – LIJ.

43.     At all times hereinafter mentioned, Defendant, MILHORAT, was an agent, servant and/or employee of Defendant, TCI.

44.     At all times hereinafter mentioned, Defendant, MILHORAT, was the Director of Defendant, TCI, and was responsible for overseeing the medical care rendered and the medical research being performed at said facility.

45.     At all times hereinafter mentioned, Defendant, MILHORAT, was the Director of Defendant, HARVEY CUSHING, and was responsible for overseeing the medical care rendered and the medical research being performed at said facility.

46.     At all times hereinafter mentioned, Defendant, MILHORAT, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

47.     At all times hereinafter mentioned, Defendant, BOLOGNESE, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

48.     At all times hereinafter mentioned, Defendant, BOLOGNESE, was an attending physician with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

49.     At all times hereinafter mentioned, Defendant BOLOGNESE was not, and is not board certified in neurosurgery, or in any area of medicine.

50.     At all times hereinafter mentioned, Defendant, BOLOGNESE, was an agent, servant and/or employee of Defendant, TCI.

51.     At all times hereinafter mentioned, Defendant, BOLOGNESE, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

52.     At all times hereinafter mentioned, Defendant, BOLOGNESE, was the Assistant Director of TCI, and was responsible for overseeing the medical care rendered and the medical research being performed at said facility.

53.     At all times hereinafter mentioned, Defendant, BOLOGNESE, was the Assistant Director of HARVEY CUSHING, and was responsible for overseeing the medical care rendered and the medical research being performed at said facility.

54.     At all times hereinafter mentioned, Defendant, KULA, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

55.     At all times hereinafter mentioned, Defendant, KULA, was an attending physician with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

56.     At all times hereinafter mentioned, Defendant, KULA, was an agent, servant and/or employee of Defendant, TCI.

57.     At all times hereinafter mentioned, Defendant, KULA, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

58.     At all times hereinafter mentioned, Defendant, REMY, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

59.     At all times hereinafter mentioned, Defendant, REMY, was a neurosurgical fellow with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

60.     At all times hereinafter mentioned, Defendant, REMY, was an agent, servant and/or employee of Defendant, TCI.

61.     At all times hereinafter mentioned, Defendant, REMY, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

62.     At all times hereinafter mentioned, Defendant, ROONPRAPUNT, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

63.     At all times hereinafter mentioned, Defendant, ROONPRAPUNT, was an attending physician with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

64.     At all times hereinafter mentioned, Defendant, ROONPRAPUNT, was an agent, servant and/or employee of Defendant, TCI.

65.     At all times hereinafter mentioned, Defendant, ROONPRAPUNT, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

66.     At all times hereinafter mentioned, Defendant, NISHIKAWA, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

67.     At all times hereinafter mentioned, Defendant NISHIKAWA, was an agent, servant and/or employee of Defendant, TCI.

68.     At all times hereinafter mentioned, Defendant, NISHIKAWA, was not a resident at Defendant, NORTH SHORE – LIJ.

69.     At all times hereinafter mentioned, Defendant, NISHIKAWA, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

70.     At all times hereinafter mentioned, Defendant, CHEN, was an agent, servant and/or employee of Defendant, NORTH SHORE – LIJ.

71.     At all times hereinafter mentioned, Defendant, CHEN, was an attending physician with privileges to admit patients to Defendant, NORTH SHORE – LIJ.

72.     At all times hereinafter mentioned, Defendant, CHEN, was an agent, servant and/or employee of Defendant, TCI.

73.     At all times hereinafter mentioned, Defendant, CHEN, was an agent, servant and/or employee of Defendant, HARVEY CUSHING.

## FACTUAL SUMMARY

74.     Plaintiff, **MELISSA E. WALKER**, was born in 1985.

75.     In or about 2003, the Plaintiff began experiencing debilitating headaches, neck pain and stiffness, and fatigue and was diagnosed with Chiari I Malformation.

76.     Chiari Malformation is a condition in which brain tissue protrudes into the spinal canal.  There are several different forms of Chiari Malformation. The most common type is the Chiari I Malformation. In normal anatomy, the cerebellar tonsils are located just above the level of the foramen magnum. In an individual with Chiari I, the tonsils hang below the level of the foramen magnum into the spinal canal.

77.     In or about 2005, the Plaintiff, MELISSA E. WALKER, was referred to THE CHIARI INSTITUTE by a college friend.

78.     The Plaintiff then reviewed the website of THE CHIARI INSTITUTE and went to said facility for an evaluation as a result of the contents of and representations contained on said website.

79.     That the Defendant, The Chiari Institute, a Division of North Shore – Long Island Jewish Medical Health System, Inc., caused a website to be created, managed, and operated to, *inter alia*, set forth content for and make representations to consumers of medical services in New York State and throughout the United States.

80.     At all pertinent times, the website of TCI advertised to the public that the physicians at said facility have expertise in the treatment of Chiari Malformations, and the performance of surgeries to treat Chiari Malformation, and other related conditions.  In addition, the website advertised to the public that the physicians at said facility have expertise in performing revision surgeries for patients whose prior surgeries have not resolved their symptoms.

81.     At all pertinent times, the website of TCI advertised to the public that "the neurosurgeons of The Chiari Institute have made major contributions to the basic sciences of Chiari Malformation (CM) and syringomyelia". Upon information and belief, Defendants knew such statement was false.

82.     At all pertinent times, the website of TCI advertised to the public that it carries out "research projects" supported by a $17.5 million dollar grant from the National Institutes of Health (NIH).

83.     The NIH grant advertised on TCI's website does not exist.  Upon information and belief, Defendants knew that the NIH grant advertised on TCI's website does not exist.

84.     At all pertinent times, the website of the Defendant, TCI, posted a video presentation by Defendant, BOLOGNESE, entitled "Tethered Cord Syndrome."

85.     At all pertinent times, the video presentation by Defendant, BOLOGNESE, contained knowingly false and misleading information regarding occult tethered cord syndrome.

86.     Defendant, BOLOGNESE, states on said video presentation that when the filum terminale becomes too thick and too tense it creates a downward pull on the spinal cord, causing a herniation of the cerebellar tonsils and Chiari Malformation, without informing the public that there are no scientific studies or peer reviewed medical literature, supporting this conclusion.

87.     Upon information and belief, Defendant, BOLOGNESE, knew that there are no scientific studies or peer reviewed medical literature supporting this conclusion.

88.     Defendant, BOLOGNESE, claims in the video presentation that Defendant, TCI, has developed the "TCI Special," a system for diagnosing occult tethered cord syndrome by utilizing clinical data, radiologic studies, stimulation tests and morphometrics.

89.     Defendant, BOLOGNESE, fails to inform the public that the concept of morphometrics as it relates to occult tethered cord syndrome is a diagnostic tool developed by Defendant, NISHIKAWA, an employee of Defendant, TCI, who is not licensed to practice medicine in the State of New York.  Upon information and belief, Defendant, BOLOGNESE, knew that Defendant, NISHIKAWA, was not licensed to practice medicine in the State of New York.

90.     Defendant, BOLOGNESE, fails to inform the public in the video presentation that the concept of morphometrics has not been widely studied or written about in the scientific or peer reviewed medical literature as it relates to occult tethered cord syndrome. Upon information and belief, Defendant, BOLOGNESE, knew that the concept of morphometrics has not been widely studied or written about in the scientific or peer reviewed medical literature as it relates to occult tethered cord syndrome.

91.    Defendant, BOLOGNESE, on said video presentation fails to advise the public that no scientific or medical proof exists proving that morphometrics is useful and efficacious in the diagnosis of occult tethered cord syndrome.

92.    Upon information and belief, Defendant, BOLOGNESE, knew that no scientific or medical proof exists proving that morphometrics is useful and efficacious in the diagnosis of occult tethered cord syndrome.

93.    Upon information and belief, Defendants, BOLOGNESE and MILHORAT, and the other physicians at Defendant, TCI, rely on Defendant, NISHIKAWA'S, interpretations of radiological studies in making the diagnosis of occult tethered cord syndrome, even though Defendant, NISHIKAWA, is not a physician licensed to practice medicine in the State of New York.

94.    Defendant, BOLOGNESE, fails to inform the public on said video presentation that he and Defendant, MILHORAT and the other physicians at Defendant, TCI, rely on Defendant, NISHIKAWA'S, interpretations of radiological studies, and on his morphometric calculations, in making the diagnosis of occult tethered cord syndrome, even though Defendant, NISHIKAWA, is not a physician licensed to practice medicine in the State of New York.

95.    In June, 2005, the Plaintiff, MELISSA E. WALKER, was evaluated at Defendant TCI, by the Defendants who confirmed her diagnosis of Chiari I Malformation.

96.    On November 30, 2005 Defendants, THOMAS H. MILHORAT, M.D. and PAOLO BOLOGNESE, M.D., performed a posterior fossa decompression surgery consisting of suboccipital craniectomy; C1 and partial C2 laminecctomies; dural opening; microlysis of arachnoidal adhesions; bipolar shrinkage of the cerebellar tonsils; expansile duroplasty employing autogenous paracranium; and remodeling of the posterior cranial fossa with a

titanium mesh/acrylic cranioplasty upon the Plaintiff, MELISSA E. WALKER, on the premises of Defendant, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC.

97.     The posterior fossa decompression revision surgery as outlined above was performed negligently in that it was unnecessarily extensive resulting in the Plaintiff developing craniocervical instability and bone loss. The Plaintiff has suffered and continues to suffer several symptoms associated with the performance of this surgery and has suffered extreme and irreversible damage that will impact the rest of her life.

98.     Since the Plaintiff did not experience resolution of her symptoms with the posterior fossa decompression, the Defendants recommended and performed craniocervical fusion on December 23, 2005 which consisted of the removal of old cranioplasty plate bilateral C2-C3 and C3-C4 arthrodesis; implantation of 14mm x 3.5mm lateral mass screws (Danek, Atlas) at C3 and C4 bilaterally; implantation of 24mm x 3.5mm pedicle screws at C2 bilaterally; implantation of bilateral Danek bar plates with four point skull fixation (8mm, 10mm, and 6mm top to bottom on the right 8mm, 10mm, 10mm, and 8mm top to bottom on the left); methyl methacrylate seal of occipital plates bilaterally; and osseous fusion employing Grafton, Infuse (bone morphogenic protein), and autologous cancellous bone.

99.     The craniocervical fusion surgery resulted in a worsening of the Plaintiff's symptoms and the development of new symptoms including severe cervical muscle spasms, pain from the protruding hardware, and loss of range of motion in the neck.

100.    In subsequent consultations at Defendant, TCI, in May and August, 2006, the Plaintiff was diagnosed with tethered cord syndrome which the Defendants claimed was causing and contributing to her Chiari Malformation and Chiari related symptoms, including but not limited to the syrinx in her thoracic spine.

101.     Defendant, NISHIKAWA, performed morphometric interpretations on the Plaintiff, MELISSA E. WALKER's radiological studies to make her diagnosis of tethered cord syndrome while he was physically present in the State of New York, even though he was not a physician licensed to practice medicine in the State of New York.

102.     Other Defendant physicians relied, in part, upon Defendant, NISHIKAWA's interpretations of the Plaintiff, MELISSA E. WALKER's radiological studies and his diagnosis of tethered cord syndrome to develop a plan of care and treatment for the Plaintiff, MELISSA E. WALKER.

103.     The Defendants recommended and performed surgery upon Plaintiff, MELISSA E. WALKER, without advising her that said surgery was unnecessary and experimental and that she was being used as a human research subject.  Specifically, on October 26, 2006, Defendants, THOMAS H. MILHORAT, M.D., PAOLO A. BOLOGNESE, M.D., L. THIERRY REMY, M.D. and CHANLAND ROONPRAPUNT, M.D., performed spinal cord untethering surgery upon the Plaintiff, MELISSA E. WALKER, on the premises of Defendant, NORTH SHORE – LONG ISLAND JEWISH HEALTH SYSTEM, INC.

104.     The Defendants, through their deceptive advertising on their website and lecture presentation materials available on the internet, and through the deceptive direct statements made to the Plaintiff, MELISSA E. WALKER, misled the Plaintiff into believing that tethered cord surgery was to be performed to treat her Chiari I Malformation and relieve her Chiari related symptoms as well as the syrinx in her thoracic spine.  Upon information and belief, Defendants knew such statement was false.

105.     The Defendants, through their deceptive statements misled the Plaintiff, MELISSA E. WALKER, into believing that she needed to have tethered cord surgery so that the

tonsillar herniation would not recur and so that she would not suffer cerebellar prolapse. Upon information and belief, Defendants knew such statements were false.

106.    The Defendants misled the Plaintiff through their deceptive advertising on their website and lecture presentation materials available on the internet, and through the deceptive direct statements made to the Plaintiff, MELISSA E. WALKER, into believing that the tethered cord surgery would ensure that the cerebellar tonsils did not get pulled down any further. Upon information and belief, Defendants knew such statement was false.

107.    The Defendants, through their deceptive advertising on their website and lecture presentation materials available on the internet, and through the deceptive direct statements made to the Plaintiff, MELISSA E. WALKER, represented to Plaintiff, MELISSA E. WALKER, that by not having the tethered cord surgery, the tethered cord would start to pull more and more, causing a worsening of her Chiari Malformation. Upon information and belief, Defendants knew such statement was false.

108.    The Defendants represented to Plaintiff, MELISSA E. WALKER, that the tethered cord surgery would treat the syrinx in her thoracic spine. Upon information and belief, Defendants knew such statement was false.

109.    The Defendants failed to advise Plaintiff, MELISSA E. WALKER, that the subject of occult tethered cord surgery as a treatment for Chiari Malformation is highly controversial in the field of neurosurgery. Upon information and belief, Defendants knew that the subject of occult tethered cord surgery as a treatment for Chiari Malformation is highly controversial in the field of neurosurgery.

110.    The Defendants' representations misled the Plaintiff into believing that the tethered cord surgery would lead to an improvement of the Plaintiff, MELISSA E. WALKER's

17

Chiari symptoms which included headaches, fatigue and other symptoms. Upon information and belief, Defendants knew that these representations were false.

111.    The Defendants' representations misled the Plaintiffs into believing that there is an association between tethered cord syndrome and Chiari I malformation and that the Tethered Cord surgery would correct her Chiari I Malformation and syrinx in the thoracic spine. Upon information and belief, Defendants knew that these representations were false.

112.    The Defendants misled the Plaintiff into believing that surgery to correct the tethered cord surgery is safe and rarely leads to complications.

113.    The Defendants did not advise the Plaintiff that tethered cord surgery, has not been widely studied in the scientific and medical community as a treatment for Chiari Malformation, and that no proof exists establishing that tethered cord surgery can improve Chiari Malformation.

114.    The Defendants did not advise the Plaintiff that there were no published peer reviewed medical studies in existence establishing that Chiari I Malformation or Chiari related symptoms can be improved through the performance of tethered cord surgery.

115.    The Defendants did not advise the Plaintiff that there were no published peer reviewed medical studies in existence establishing that tethered cord surgery is a scientifically accepted and efficacious treatment for Chiari Malformation.

116.    That Defendants did not advise the Plaintiff that articles written by physicians associated with Defendant, TCI, on the topic of tethered cord surgery as a treatment for Chiari I Malformation had been submitted for publication, but had been rejected by peer reviewed medical journals.

117.    The Plaintiff, MELISSA E. WALKER, underwent surgery to allegedly fix her tethered cord on October 26, 2006 at Defendant, NORTH SHORE – LIJ, which was performed by Defendants, MILHORAT, BOLOGNESE, REMY and ROONPRAPUNT.

118.    Defendant, MILHORAT, acted as the primary surgeon and was assisted during the procedure by Defendants, BOLOGNESE, REMY and ROONPRAPUNT.

119.    Defendants, MILHORAT, BOLOGNESE, REMY and ROONPRAPUNT charged in excess of FORTY THOUSAND ($40,000.00) DOLLARS to perform the tethered cord surgery.

120.    The Plaintiff, MELISSA E. WALKER, developed significant injuries following the performance of the tethered cord surgery, including but not limited to chronic lower back pain, chronic pain in both legs, spinal instability and other complications and injuries.

121.    The tethered cord surgery did not relieve the Plaintiff's symptoms, and instead, created additional symptoms.  As a result of this surgery, the Plaintiff has severe and debilitating back pain and other complications and injuries.

122.    The Defendants induced the Plaintiff, MELISSA E. WALKER, to have experimental tethered cord surgery, solely for their financial gain, full well knowing that there is no scientific or medical proof that tethered cord surgery provides any real improvement of the patient's Chiari Malformation or Chiari related symptoms.

123.    The Defendant, BOLOGNESE, presented a lecture at the meeting of the Association of Syringomylia held in July, 2008, in Arlington, Virginia, which is available on the internet, wherein he stated that a prospective study in tethered cord surgery was being performed at Defendant, TCI.

124.    The Defendants, performed experimental surgery upon the Plaintiff, without advising the Plaintiff that the surgery was experimental in nature as it related to the treatment of her Chiari Malformation and Chiari related symptoms, or that her case would be studied and included in a nationwide study that was being performed on a condition known as Elher's Danlos Syndrome, which the Defendants claimed was connected to Tethered Cord Syndrome.

125.    Upon information and belief, without the Plaintiff's consent, pathologic studies were performed upon specimens removed from the Plaintiff's body during the unnecessary Tethered Cord Surgery, solely for purposes of gathering information for the various studies being conducted at Defendant, TCI.

126.    The Defendants neither advised the Plaintiff about the experimental nature of the surgery, nor did the Defendants ask the Plaintiff to sign a consent form of the type that would be required for participation in human experimentation.

127.    The Plaintiff, MELISSA E. WALKER, now suffers from significant injuries arising from the performance of the unnecessary and medically useless tethered cord surgery performed on October 26, 2006 by Defendants, MILHORAT, BOLOGNESE, REMY and ROONPRAPUNT, at Defendant, NORTH SHORE – LIJ, and the improperly performed posterior fossa decompression performed on November 30, 2005, and the unnecessary and improperly performed craniocervical fusion surgery performed on December 23, 2005, by Defendants, MILHORAT and BOLOGNESE, at Defendant, NORTH SHORE – LIJ; some of these injuries include but are not limited to: chronic lower back pain, chronic leg pain and spinal instability, extensive bone loss in the cervical spine, cervical muscle spasms, incisional pain and pain from the protruding hardware, as well as significant loss of range of motion in the neck.

128.   In addition to suffering physical and emotional injuries, the Plaintiff has been caused to suffer financially as a result of having the unnecessary surgery recommended by the Defendants, including but not limited to, having to expend monies not covered by insurance, such as the initial consultation fee charged by Defendants.

129.   The Plaintiff was covered by medical insurance at the time of her treatment by the Defendants.

130.   The Defendants charged the Plaintiff in excess of $40,000.00 for the unnecessary surgery they performed, and Plaintiff's health insurance carrier paid a portion of those charges.

131.   The Plaintiff's health insurance carrier under an equitable or contractual right of subrogation or under ERISA will seek reimbursement from the Plaintiff if she recovers monetary damages from this case.

132.   In the event that the Plaintiff recovers a monetary award from this case, she will be required to reimburse her health insurance carrier for the payments it has made to the Defendants and to her subsequent treating physicians who have treated her damages sustained in connection with the Defendants' malpractice.

133.   The fact that the Plaintiff will need to repay monies to her health insurance carrier is a direct and proximate result of the Defendants' fraudulently recommending and performing unnecessary surgery upon her, while knowing that said surgery was unnecessary and useless.

## AS AND FOR A FIRST CAUSE OF ACTION

### (MEDICAL MALPRACTICE)

134.   That Plaintiff, **MELISSA E. WALKER**, came under the care of the Defendants, **MILHORAT, BOLOGNESE, KULA, REMY, ROONPRAPUNT, NISHIKAWA, CHEN, TCI, HARVEY CUSHING and NORTH SHORE - LIJ**, in or about June, 2005.

135.    That the Defendants, MILHORAT, BOLOGNESE, REMY, ROONPRAPUNT, NORTH SHORE – LIJ, TCI and HARVEY CUSHING, performed surgery upon Plaintiff, MELISSA E. WALKER, on November 30, 2005, December 23, 2005 and October 26, 2006.

136.    That Defendant, NISHIKAWA, reviewed the Plaintiff, MELISSA E. WALKER's MRI's and other radiological studies and helped formulate the Plaintiff's diagnosis of occult tethered cord syndrome and plan of care and treatment.

137.    That the Plaintiff, MELISSA E. WALKER, continued to receive care from each of these Defendants until approximately August, 2007.

138.    At all times herein mentioned, the Defendants had a duty to use reasonable and proper care in their efforts to care for, treat and medicate said Plaintiff.

139.    That the Defendant, NORTH SHORE – LIJ, in rendering services to the Plaintiff, owed her the duty to use the degree of care, skill and diligence used by hospitals generally in the community.

140.    That the Defendants, jointly and severally, acting by themselves and through their agents, failed to use due, reasonable and proper care in treating the Plaintiff and deviated from accepted standards of medical care prevailing in the area of neurology and neurosurgery, and the Defendants failed to exercise the knowledge, skill and diligence, which as physicians they should have possessed and exercised on behalf of the Plaintiff, and were otherwise careless and negligent.

141.    That as a result of the foregoing, the Plaintiff, MELISSA E. WALKER, has sustained serious, severe and irreversible personal injuries, and pain and suffering, and lost earnings.

142.    That solely as a result of the aforesaid injuries due to the improper care and treatment on the part of the Defendants, the Plaintiff, MELISSA E. WALKER, has been subjected to repeated medical therapy, examinations, tests, medications, hospitalizations, and other care, and the Plaintiff, MELISSA E. WALKER, will continue to require such further treatment in the future.

143.    That the Plaintiff, MELISSA E. WALKER, has sustained the injuries and damages set forth solely by reason of the carelessness, negligence and lack of skill of the Defendants, without any negligence or carelessness on the part of Plaintiff, MELISSA E. WALKER.

144.    That the Plaintiff, MELISSA E. WALKER, is entitled to monetary damages stemming from this cause of action in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

## AS AND FOR A SECOND CAUSE OF ACTION

### (LACK OF INFORMED CONSENT)

145.    Plaintiff, **MELISSA E. WALKER,** repeats and realleges each and every allegation contained in Paragraphs numbered **"1"** through **"144",** inclusive, of this Verified First Amended Verified Complaint, with the same force and effect as if set forth herein at length.

146.    The Defendants were under a duty and obligation to advise and inform the Plaintiffs, MELISSA E. WALKER, of inherent dangers, risks, and consequences of the medical treatment and procedures recommended by the Defendants, and that the Defendants failed, neglected, and/or refused to advise, inform, notify the Plaintiff, MELISSA E. WALKER, of the apparent risk and possible complications and dangers which might result in the aforesaid procedures and/or treatment recommended.

147.   Defendants failed, neglected, and/or refused to inform, advise, notify, and counsel the Plaintiff, MELISSA E. WALKER, of the possible inherent dangers and risks of said procedures and treatment recommended and performed, and failed to advise and inform the Plaintiff, MELISSA E. WALKER, of any other method of treatment which might have been used to alleviate the condition from which the Plaintiff, MELISSA E. WALKER, was suffering.

148.   Said failure to advise, inform, notify, and counsel the Plaintiff, MELISSA E. WALKER, did not afford her adequate knowledge and information so as to determine whether or not she should submit to the aforesaid treatment and, therefore, the Plaintiff, MELISSA E. WALKER, did not give her informed consent, based upon adequate knowledge of the risks and dangers of the procedures; but rather, consented based upon information which was inadequate and insufficient upon which to base a decision to submit to the said procedure.

149.   By reason of the aforesaid, the treatment given herein was not based upon adequate and sufficient knowledge or informed consent.

150.   Plaintiff, MELISSA E. WALKER, has sustained the injuries and damages, as set forth, solely by reason of the carelessness, negligence, and unskillfulness of the Defendants, and each of them, without negligence or carelessness on their parts contributing thereto.

151.   That the Plaintiff, MELISSA E. WALKER, is entitled to monetary damages stemming from this cause of action in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

### AS AND FOR A THIRD CAUSE OF ACTION

(FRAUD)

152.   The Plaintiff, **MELISSA E. WALKER,** repeats and realleges each and every allegation contained in Paragraphs numbered **"1"** through **"151"**, inclusive, of this Verified Compliant, with the same force and effects as if set forth herein at length.

24

153.    That on or about November 30. 2005, December 23, 2005 and October 26, 2006 Plaintiff, MELISSA E. WALKER, had surgery at NORTH SHORE – LIJ, performed by Defendants, MILHORAT, BOLOGNESE, REMY and ROONPARPUNT.

154.    That Plaintiff, MELISSA E. WALKER, was fraudulently induced into having surgery by Defendants, MILHORAT, BOLOGNESE, KULA, REMY, ROONPRAPUNT, NISHIKAWA, CHEN, TCI, HARVEY CUSHING and NORTH SHORE – LIJ.

155.    That the Defendants falsely advised the Plaintiff that she was suffering from tethered cord syndrome, and that said Defendants knew these statements were false when made.

156.    That the Defendants falsely advised the Plaintiff that she needed tethered cord surgery, and that said Defendants knew these statements were false when made.

157.    That the Defendants falsely advised the Plaintiff that by undergoing tethered cord surgery, there would be an improvement of her Chiari Malformation and her Chiari related symptoms, and that said Defendants knew these statements were false when made.

158.    That the Defendants falsely advised the Plaintiff that by undergoing tethered cord surgery, her syrinx at T5-T11 would resolve and that said Defendants knew these statements were false when made.

159.    That the Defendants falsely advised the Plaintiff that the tethered cord surgery would treat her syrinx at T5-T11 and that said Defendants knew these statements were false.

160.    That the Defendants falsely advised the Plaintiff that she needed to undergo tethered cord surgery to ensure that she would not suffer re-herniation of the cerebellar tonsils and cerebellar prolapse and that said Defendants knew these statements were false when made.

161.    That these representations were falsely made, and in truth the Plaintiff did not suffer from tethered cord syndrome and, in fact, there was no published medical or scientific

proof that Chiari I malformation or Chiari related symptoms can be improved through the performance of tethered cord surgery.

162. That these representations were falsely made, and in truth the Plaintiff did not suffer from tethered cord syndrome and, in fact, there was no published medical or scientific proof that a syrinx in the thoracic spine can be treated with tethered cord surgery.

163. That in fact, the Defendants failed to inform the Plaintiff that tethered cord surgery can adversely affect the patient.

164. That the Defendants fraudulently advised the Plaintiff on their website that Defendants, TCI and HARVEY CUSHING are supported by a $17.5 million dollar grant from the NIH which in fact, does not exist.

165. That Defendant, BOLOGNESE, in the video presentation entitled "Tethered Cord Syndrome" posted on Defendant, TCI's, website, knowingly and with intent to deceive, advised the public that the Defendants had developed the "TCI Special," a diagnostic system enabling them to diagnose occult tethered cord syndrome through the evaluation of clinical, radiological and stimulation data, and morphometrics.

166. That Defendant, BOLOGNESE, in the video presentation entitled "Tethered Cord Syndrome" posted on Defendant, TCI's, website, knowingly and with intent to deceive failed to advise the public that the use of morphometrics in the diagnosis of occult tethered cord syndrome, is a concept developed by Defendant, NISHIKAWA, an employee by Defendant, TCI, who is an unlicensed physician in the State of New York.

167. That Defendant, BOLOGNESE, in the video presentation entitled "Tethered Cord Syndrome" posted on Defendant, TCI's, website, knowingly and with intent to deceive failed to

advise the public that morphometrics has not been accepted as a standard diagnostic tool for occult tethered cord syndrome.

168.   That Defendant BOLOGNESE in the video presentation entitled "Tethered Cord Syndrome" posted on Defendant TCI's website knowingly and with intent to deceive failed to advise the public that there are no scientific studies or peer reviewed medical literature in existence demonstrating that morphometrics is useful and efficacious in the diagnosis of occult tethered cord syndrome.

169.   That Defendant, BOLOGNESE, knowingly and with intent to deceive failed to advise the public in the video presentation on Tethered Cord Syndrome posted on Defendant, TCI's, website, that he and Defendant, MILHORAT, and the other physicians at Defendant, TCI, rely upon Defendant, NISHIKAWA'S, interpretation of various radiological studies, and his morphometric calculations, in making the diagnosis of occult tethered cord syndrome, even though Defendant, NISHIKAWA, was not, and is not, a licensed medical doctor in the State of New York.

170.   That the Defendant physicians knowingly and with intent to deceive, failed to advise the Plaintiff that the Defendant physicians relied upon Defendant, NISHIKAWA's morphometric interpretations in making her diagnosis of occult tethered cord syndrome and in formulating the Plaintiff's plan of care even though Defendant, NISHIKAWA was not a licensed physician in the State of New York.

171.   That the Defendant physicians knowingly and with intent to deceive, failed to advise the Plaintiff, MELISSA E. WALKER that the Defendant physicians relied upon Defendant, NISHIKAWA's morphometric interpretations in making her diagnosis of occult

tethered cord syndrome and in formulating her plan of care even though Defendant, NISHIKAWA was not a licensed physician in the State of New York.

172.    That the Defendants jointly and severally recommended said surgery solely for their own financial gain, knowing full well that there was no scientific proof that this surgery would improve the Plaintiff's Chiari Malformation or Chiari related symptoms, or syrinx at T5-T11 or be of any benefit to the Plaintiff.

173.    That as a result of the knowingly false representations made by the Defendants, the Plaintiff, MELISSA E. WALKER, was fraudulently induced into having tethered cord surgery on October 26, 2006.

174.    That the Plaintiff, MELISSA E. WALKER, detrimentally relied on the fraudulent information provided by the Defendants as set forth in the paragraphs above, and agreed to have tethered cord surgery, which was performed by the Defendants on October 26, 2006.

175.    As a result of having tethered cord surgery by the Defendants, the Plaintiff was caused to suffer serious physical and emotional injuries, including but not limited to increased lower back pain and spinal instability.

176.    In addition to suffering physical and emotional injuries, the Plaintiff has been caused to suffer financially as a result of having the unnecessary surgeries recommended by the Defendants, including but not limited to, having to expend monies for medical expenses not covered by insurance, such as the initial consultation fee charged by Defendants.

177.    The Plaintiff was covered by medical insurance at the time of her treatment by the Defendants.

178.    The Defendants charged the Plaintiff is excess of $40,000.00 for the unnecessary surgeries they performed, and Plaintiff's health insurance carrier paid a portion of those charges.

179.   The Plaintiff's health insurance carrier under an equitable or contractual right of subrogation or under ERISA will seek reimbursement from the Plaintiff if she recovers monetary damages from this case.

180.   In the event that the Plaintiff recovers a monetary award from this case, she will be required to reimburse her health insurance carrier for the payments it has made to the Defendants and to her subsequent treating physicians who have treated her damages sustained in connection with the Defendants' malpractice.

181.   As a result of the fraud perpetrated by the Defendants upon the Plaintiff, MELISSA E. WALKER, she is entitled to punitive damages.

182.   Accordingly, the Plaintiff, MELISSA E. WALKER has suffered compensatory and punitive damages in an amount exceeding TEN MILLION ($10,000,000.00) DOLLARS.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (VIOLATION OF NYS GBL SECTIONS 349 and 350)

183.   The Plaintiff, **MELISSA E. WALKER**, repeats and realleges each and every allegation contained in Paragraphs numbered **"1"** through **"182"**, inclusive of this Verified First Amended Verified Complaint, with the same force and effect as if set forth herein at length.

184.   That the Plaintiff, MELISSA E. WALKER, was a consumer of medical services provided by Defendants in the State of New York.

185.   That the making and dissemination of the representations by the Defendants to Plaintiff, MELISSA E. WALKER, as well as other consumers throughout the United States, as outlined in Paragraphs 74-133 were material and constitute deceptive business practices and acts and false advertising in violation of New York State General Business Law Sections 349 and 350.

186.    Through their aforementioned conduct, Defendants, MILHORAT, BOLOGNESE, KULA, REMY, ROONPRAPUNT, NISHIKAWA, CHEN, NORTH SHORE - LIJ, TCI and HARVEY CUSHING, aided and abetted one another and violated N.Y.S. General Business Law Sections 349 and 350.

187.    The Plaintiff, MELISSA E. WALKER, was injured and sustained injuries as a result of the Defendants false business practices and false advertising, in that she was induced into having surgery, that not only failed to improve her symptoms, but made her medical condition worse, to the extent that she will suffer from spinal injuries that she sustained during the surgery of October 24, 2008 and the surgery of November 12, 2008, and other injuries as a result of the surgery on March 10, 2008 that will affect her for the rest of her life.

188.    The Plaintiff, MELISSA E. WALKER, seeks to recover actual compensatory damages for the injuries she sustained as a result of the Defendants' deceptive business practices, acts and false advertising.

189.    The Plaintiff, MELISSA E. WALKER, seeks to recover punitive damages and reasonable attorney's fees and costs as a result of the Defendants' deceptive business practices, acts and false advertising pursuant to the New York State G.B.L. Section 349 and 350.

190.    That due to the Defendants' deceptive business practices, the Plaintiff, MELISSA E. WALKER, has been damaged in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

## AS AND FOR A FIFTH CAUSE OF ACTION

### (NEGLIGENT HIRING AND RETENTION)

191.    The Plaintiff, **MELISSA E. WALKER**, repeats and realleges each and every allegation contained in Paragraphs numbered **"1"** through **"190"**, inclusive of this Verified First Amended Verified Complaint, with the same force and effect as if set forth herein at length.

192. That the Defendants, MILHORAT, BOLOGNESE, KULA, REMY, ROONPRAPUNT, NISHIKAWA and CHEN were employees of Defendant, NORTH SHORE – LIJ.

193. That the Defendant, NORTH SHORE – LIJ, owed the Plaintiff the duty to hire employees who were fit to treat the conditions she was suffering from.

194. That the Defendants were unfit to render treatment to the Plaintiff, MELISSA E. WALKER.

195. That Defendant, NORTH SHORE – LIJ, should have known through the exercise of reasonable diligence, that the Defendants were unfit to practice medicine and dangerous and that said Defendants were performing unnecessary surgeries solely for financial gain, and should have further known that the Defendants were conducting human experimentation without having the proper consent.

196. That there was a foreseeable risk of harm to the Plaintiff, MELISSA E. WALKER.

197. That Defendant, NORTH SHORE - LIJ's negligence in hiring and retaining the Defendants, MILHORAT, BOLOGNESE, KULA, REMY, ROONPRAPUNT, NISHIKAWA and CHEN, caused the Plaintiff to suffer severe and irreversible injuries from which she will suffer for the rest of her life.

198. That due to the Defendants' negligent hiring and retention, the Plaintiff, MELISSA E. WALKER, has been damaged in the sum of TEN MILLION ($10,000,000.00) DOLLARS.

**WHEREFORE**, the Plaintiff, **MELISSA E. WALKER,** demands judgment against the Defendants

(a)     on the FIRST CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;

(b)     on the SECOND CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;

(c)     on the THIRD CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;

(d)     on the FOURTH CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS; and

(e)     on the FIFTH CAUSE OF ACTION in the sum of TEN MILLION ($10,000,000.00) DOLLARS;  and

together with costs, interest and disbursements of this action, and for such other and further relief that this Court deems just and proper.

Dated: New York, New York
      February 11th, 2010

                         **GOLDSMITH CTORIDES &**
                         **RODRIGUEZ, LLP**
                         Attorneys for Plaintiffs

By:

CHRISTINA CTORIDES (CC 5271)
LEE S. GOLDSMITH (LSG 8875)
Members of the Firm
Office & P.O. Address
747 Third Avenue, 37th Floor
New York, New York 10017
(212) 421-5500

and

32

**THE LOCKS LAW FIRM, PLLC**
STEVEN P. KNOWLTON
GENE LOCKS
JANET C. WALSH
ANDREW P. BELL
747 Third Avenue, 37th Floor
New York, New York 10017
(212) 838-3333

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MELISSA E. WALKER,

                         Plaintiff,

      -against-

THOMAS H. MILHORAT, M.D., PAOLO A.
BOLOGNESE, M.D., ROGER W. KULA, M.D., L.
THIERRY REMY, M.D., ROHIT VERMA, M.D.,
CHANLAND ROONPRAPUNT, M.D., MISAO
NISHIKAWA, M.D., NORTH SHORE – LONG
ISLAND JEWISH HEALTH SYSTEM, INC. , THE
CHIARI INSTITUTE, an unincorporated entity of
North Shore University Hospital and HARVEY
CUSHING INSTITUTES OF NEUROSCIENCE, an
unincorporated entity of North Shore University
Hospital,

                         Defendants.
-------------------------------------------------------------X

Civil Action No.:

**JURY DEMAND**

**JURY DEMAND**

   **PLEASE TAKE NOTICE** that the Plaintiffs demand a trial by jury on all the issues herein.

Dated: New York, New York
       February 11th, 2010

                 **GOLDSMITH CTORIDES &
                 RODRIGUEZ, LLP**
                 Attorneys for Plaintiffs

       By:
                 CHRISTINA CTORIDES (CC 5271)
                 LEE S. GOLDSMITH (LSG 8875)
                 Members of the Firm
                 Office & P.O. Address
                 747 Third Avenue, 37th Floor
                 New York, New York 10017
                 (212) 421-5500

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X        Civil Action No.

MELISSA E. WALKER,

                                    Plaintiff,                       **CERTIFICATE**

              -against-                                              **OF MERIT**

THOMAS H. MILHORAT, M.D., PAOLO A.
BOLOGNESE, M.D., ROGER W. KULA, M.D., L.
THIERRY REMY, M.D., ROHIT VERMA, M.D.,
CHANLAND ROONPRAPUNT, M.D., MISAO
NISHIKAWA, M.D., NORTH SHORE – LONG
ISLAND JEWISH HEALTH SYSTEM, INC. , THE
CHIARI INSTITUTE, an unincorporated entity of
North Shore University Hospital and HARVEY
CUSHING INSTITUTES OF NEUROSCIENCE, an
unincorporated entity of North Shore University
Hospital,

                                    Defendants.
------------------------------------------------------------X
STATE OF NEW JERSEY    )
                       : ss.:
COUNTY OF BERGEN       )

        **CHRISTINA CTORIDES,** a member of the law firm of **GOLDSMITH, CTORIDES**

**& RODRIGUEZ, LLP.,** hereby affirms the truth of the following:

        That pursuant to the Rules of Civil Procedure §3012(a), the deponent states that she has

conferred with a physician who is a specialist in the field in which the Defendants' practice

medicine and has been advised that sufficient basis exist for the commencement of this medical

malpractice suit.

                                                    CHRISTINA CTORIDES (CC 5271)

Sworn to before me this
11th day of February, 2010

_____
ATTORNEY AT LAW
STATE OF NEW JERSEY

FRANCISCO RODRIGUEZ, ESQ.

STATE OF NEW JERSEY    )
                                           : ss.:
COUNTY OF BERGEN       )

     **CHRISTINA CTORIDES,** being duly sworn, deposes and says:

     I am a member of the law firm of **GOLDSMITH, CTORIDES & RODRIGUEZ, LLP,** attorneys for the Plaintiffs in the within action.  That I have read the foregoing First Amended Verified Complaint and Jury Demand and know the contents thereof; that the same is true, to my knowledge, except as to the within matters stated to be alleged upon information and belief, and that, as to those, I believe them to be true.  That the sources of my information are papers and records in Deponent's possession and file.  That the reason this Verification is made by your Deponent, and not by said Plaintiffs, are that the Plaintiffs do not reside within the County wherein your Deponent maintains his office.

 

**CHRISTINA CTORIDES (CC-5271)**

Sworn to before me this
11th day of February, 2010.

_____
    Attorney at Law
    STATE OF NEW JERSEY

    FRANCISCO RODRIGUEZ, ESQ.